COMP
JOHN T. KEATING, ESQ.
Nevada Bar No. 6373
KEGAN A. MCMULLAN, ESQ.
Nevada Bar No. 16278
K E A T I N G LAW GROUP
9130 W. Russell Road, Suite 200
Las Vegas, Nevada 89148
*jkeating@keatinglg.com*
*kmcmullan@keatinglg.com*
(702) 228-6800 phone
(702) 228-0443 facsimile
*Attorneys for Plaintiff*
*Key Insurance Company*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEY INSURANCE COMPANY;<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JOSHUA COOK, an Individual; SHANTE TAYLOR, an Individual; IMAD HELOU, an Individual; DOES I through X; and ROE CORPORATIONS I through X, inclusive,<br><br>　　　　　Defendants. | CASE NO.:<br>DEPT. NO.:<br><br>COMPLAINT FOR<br>DECLARATORY RELIEF<br><br>(Exempt from Mandatory Arbitration Program Pursuant to NAR 3(A) and 5(A)) |

Plaintiff KEY INSURANCE COMPANY ("Key"), by and through its attorneys, KEATING LAW GROUP, alleges and claims as follows:

## PARTIES

1. Plaintiff Key is and was at all times relevant to these proceedings a foreign corporation licensed to do business in Nevada, with its principal place of business in Kansas.

2. Defendant JOSHUA COOK ("Cook") is and was at all times relevant to these proceedings a citizen of Clark County, Nevada.

1

3. Defendant SHANTE TAYLOR ("Taylor") is and was at all times relevant to these proceedings a citizen of Clark County, Nevada.

4. Defendant IMAD HELOU ("Helou") was, at all times relevant to these proceedings, a citizen of Clark County, Nevada.

5. The true names and capacities of Defendants sued herein as DOES I through X, inclusive, and ROE CORPORATIONS I through X, inclusive and each of them, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek to amend this Complaint to set forth the true names and capacities of said fictitiously named Defendants when the same has been fully ascertained.

## GENERAL ALLEGATIONS & UNDERLYING ACCIDENT

6. Plaintiff Key repeats and re-alleges the allegations contained in Paragraphs 1 through 5 as though fully set forth herein.

7. This Complaint involves an underlying automobile accident that took place on November 16, 2020.

8. At the time of the accident, Helou was operating a 2015 Hyundai Accent and was stopped facing eastbound at a red traffic signal on Tropicana Avenue at the intersection of Rainbow Boulevard in Las Vegas, Nevada.

9. Cook was operating a 2012 Toyota Corolla that was registered to Taylor with her permission (the "Subject Vehicle").

10. Cook was traveling eastbound on Tropicana when the front passenger's side of the Subject Vehicle struck the rear driver's side of Helou's vehicle (the "Subject Accident").

11. Las Vegas Metropolitan Police Department ("LVMPD") responded to the scene and cited Cook at-fault for causing the Subject Accident.

12. Based on the foregoing, Helou filed his Complaint on March 31, 2021, in the Eighth Judicial District Court of Nevada, Case No.: A-21-832135-C, alleging causes of action against Cook for: 1) negligence; and 2) negligence *per se*.

## KEY INSURANCE POLICY

13. Plaintiff Key repeats and re-alleges the allegations contained in Paragraphs 1 through 12 as though fully set forth herein.

14. At all times relevant to these proceedings, Taylor was insured through her automobile insurance policy with Key, Policy Number: KNV4550073.

15. Under the Subject Policy, the provisions of the Subject Policy shall be interpreted in accordance with the laws of the State of Nevada.

16. Under the Subject Policy, an "insured person" includes the named insured, as well as any other person not excluded from coverage who uses the named insured's vehicle with the named insured's permission and within the scope of that permission.

17. Under the Subject Policy, Key's bodily injury liability is limited to the limit of liability shown on the policy declarations page.

18. The Subject Policy's limit for bodily injury liability was $25,000 per person.

19. The Subject Policy was in effect at the time of the Subject Accident.

20. The Subject Vehicle was insured under the Subject Policy.

21. Therefore, because Cook was using Taylor's car with her permission and was not listed as a person excluded from coverage, Cook qualified as an insured person under the Subject Policy, and is thus covered by the Subject Policy which was in effect at the time of the Subject Accident.

22. Furthermore, under the policy limits of the Subject Policy, Key's coverage obligation for bodily injury claims arising from the Subject Accident is limited to $25,000 per person.

## COOK & TAYLOR FAILED TO COOPERATE

23. Plaintiff Key repeats and re-alleges the allegations contained in Paragraphs 1 through 22 as though fully set forth herein.

24. Sometime prior to 1:45pm on November 17, 2020, Taylor called Key to attempt to report the Subject Accident.

25. During her first call, Taylor made certain statements to Key personnel, including:

   a. Taylor's vehicle was involved in an accident at approximately 2:00am on November 17, 2020;

   b. Taylor was not the driver at the time of the accident;

   c. The unnamed driver was not listed on Taylor's insurance policy; and

   d. Taylor would call back later to file the claim.

26. On November 17, 2020, at approximately 1:45pm, Taylor called Key again and gave a recorded statement to Key personnel regarding the Subject Accident.

27. During her second call, Taylor made certain statements to Key personnel, including:

   a. Taylor was the driver of her vehicle that was involved in an accident at approximately 12:00am or 12:35am on November 17, 2020;

   b. Taylor had no passengers in her vehicle at the time of the accident;

   c. Taylor rear-ended another vehicle;

   d. The other driver involved in the accident drove off because they didn't have any insurance;

   e. Police were not called out to the scene of the accident; and

   f. There were no injuries as a result of the accident.

28. Non-party Desert Ridge Legal Group ("Desert Ridge") was retained by Key to represent Cook and Taylor in the underlying Subject Accident.

29. Desert Ridge sent letters to Cook and Taylor via mail which were returned after unsuccessful delivery, including letters dated on:

   a. June 17, 2021;

   b. March 23, 2022;

   c. July 7, 2022;

   d. August 20, 2022; and

   e. September 15, 2022.

30. Helou attempted to take the deposition of Cook in which he failed to appear on:

   a. September 15, 2022; and

   b. April 28, 2023.

31. Upon information and belief, as of August 29, 2022, Taylor was living in a homeless shelter in Pasadena, California, and Cook was homeless in Las Vegas, Nevada.

32. On March 21, 2023, a "skip trace" was conducted on Cook.

33. As of March 24, 2023, the phone numbers provided for Cook in his skip trace report are no longer registered to his name.

34. Under the Subject Policy, the insureds had a duty to provide to Key certain truthful and accurate information, including:

   a. The address and telephone number where the insured can be contacted;

   b. The hour, date, place, and facts of the accident or loss; and

   c. The names and addresses of all persons or witnesses involved.

35. Under the Subject Policy, the insureds also had a duty to cooperate with and assist Key in any reasonable manner regarding an accident or loss, including:

   a. Making settlements;

    b. Securing and giving evidence;

    c. Delivering to Key, as soon as possible, any papers received relating to a claim or suit;

    d. Appearing, testifying, and getting witnesses to testify at hearings or trials only as Key shall direct; and

    e. Giving to the representative(s) that Key designates, statements, including statements under oath, as often as Key reasonably requests and at a time and place that is suitable to the insureds and Key.

36. In Nevada, "absolute-liability statutes are interpreted to require payment of the minimum statutorily required insurance benefits . . . . even if the insured has breached the insurance contract or made misrepresentations in the insurance application." *Torres v. Nev. Direct Ins. Co.*, 131 Nev. 531, 537 (2015). This includes an insured's noncompliance with the notice and cooperation clauses of their policy. *Id*.

37. Nevada has such an absolute liability statute in which "the liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute whenever injury or damage covered by the policy occurs" and that "no violation of the policy defeats or voids the policy" after an accident has occurred. NRS 485.3091.5.(a).

38. Taylor failed to provide truthful and accurate information regarding the Subject Accident as required under the Subject policy, evidenced by her inconsistent statements taken during her recorded statements with Key personnel.

39. Furthermore, Cook and Taylor failed to provide updated contact information where they could be reached as required under the Subject Policy, evidenced by the returned mail, that Cook and Taylor are homeless, and that Cook no longer has any working phone numbers.

40. Furthermore, Cook and Taylor failed to cooperate with Key regarding the Subject Accident as required under the Subject Policy, evidenced by Taylor's failure to provide truthful and accurate information regarding the Subject Accident, Cook and Taylor's failure to provide updated contact information, and that Cook has failed to appear for multiple depositions.

41. Furthermore, despite the fact that Cook and Taylor have failed to comply with several provisions of the Subject Policy, Key is obligated to uphold the Subject Policy regarding the Subject Accident under the absolute liability statute of NRS 485.3091.

42. Furthermore, due to Cook and Taylor's failure to cooperate and comply with several provisions of the Subject Policy, Key was limited in its ability to reduce damages in the underlying matter, which in turn has caused damages to Key.

43. Furthermore, Key's liability exposure is limited to the minimum statutorily required policy limits of the Subject Policy of $25,000 as decided in *Torres*.

## KEY PROPERLY HANDLED THE UNDERLYING CLAIM

44. Plaintiff Key repeats and re-alleges the allegations contained in Paragraphs 1 through 43 as though fully set forth herein.

45. There is no indication that Key did not properly handle the underlying claim arising from the Subject Accident.

46. Non-party Key employee Taleea Moore ("Moore") opened the claim on November 17, 2020, and immediately began updating the claim file based on information provided by Taylor during her recorded statements.

47. On November 18 and 19, 2020, Non-party Key employee Halley Dean ("Dean") attempted to call Taylor to clarify who had been driving the Subject Vehicle at the time of the Subject Accident.

48. On November 20, 2020, Moore received a letter of representation from Paul Powell Law Firm regarding its client, Helou, which stated that Cook was the driver of the Subject Vehicle during the Subject Accident.

49. Also on November 20, 2020, Dean called and left messages for Cook and Taylor but could not get into contact with them.

50. On November 24, 2020, Dean reported that she was still trying to reach Cook and Taylor to no avail.

51. Also on November 24, 2020, non-party Key employee Robert Larson ("Larson") sent a letter to Helou's attorney acknowledging his representation.

52. On December 17, 2020, Dean sent text messages to Cook and Taylor in an attempt to get into contact with them.

53. On January 26, 2021, non-party Key employee Leonard Gragson ("Gragson") received a demand letter from Helou for Taylor's policy limits, but the letter did not offer any discussion about liability or damages and did not provide enough time to respond as required under Nevada law.

54. On January 27, 2021, Larson called Cook and left him a voicemail, but was able to reach Taylor where he confirmed that Cook did not have any additional insurance policies.

55. Also on January 27, 2021, Moore closed the property damage claim for Helou.

56. On January 29, 2021, Larson sent a letter to Helou through his counsel acknowledging his policy limits demand.

57. On February 1, 2021, Larson received another policy limits demand from Helou.

58. On February 10, 2021, Larson, on behalf of Key, sent an offer of $13,750.00 to Helou but did not receive a response.

59. Key reasonably based the aforementioned offer regarding its value of Helou's bodily injury claim on information such as Helou's age, relatively minor to moderate impact of

the vehicles during the Subject Accident, that he was not transported by an ambulance to a hospital emergency room immediately following the Subject Accident, his pain and injuries complained of at the time of treatment, overall medical treatment history, lack of supporting documentation regarding certain injections, and opinions of Key's medical expert Dr. James Olson regarding his review of Helou's medical records.

60. On March 31, 2021, Helou filed his Complaint (see Complaint).

61. There was a reasonable basis for Key's claims handling process, which was appropriate regarding the underlying Subject Accident when it investigated the claim, declined to accept Helou's policy limits demand, and offered $13,750.00 to resolve Helou's bodily injury claim; thus, there is no exposure to Key above the Subject Policy's limits of $25,000 per person.

## FIRST CLAIM FOR RELIEF
(Declaratory Relief)

62. Plaintiff Key repeats and re-alleges the allegations contained in Paragraphs 1 through 61 as though fully set forth herein.

63. An actual dispute and controversy exists between Key and Defendants regarding whether Key is liable in excess of the Subject Policy's policy limits for Helou's bodily injury claim arising from the underlying Subject Accident.

64. Therefore, Key is entitled to an Order from this Court declaring the rights, duties, and obligations of the parties under the Subject Policy.

**WHEREFORE**, Plaintiff Key prays for the following:

1. An Order from the Court declaring that the Subject Policy is valid, enforceable, and was in effect at the time of the Subject Accident, and that Cook qualified as an "insured person" under the Subject Policy at the time of the Subject Accident;

2. An Order from the Court declaring that Taylor failed to provide truthful and accurate information to Key regarding the Subject Accident, that Cook and Taylor failed to provide updated contact information to Key, and that Cook and Taylor failed to cooperate with Key regarding the Subject Accident, each failure in violation of provisions of the Subject Policy; therefore Key's maximum exposure for Helou's claims for bodily injury against Cook arising from the Subject Accident is limited to $25,000;

3. An Order from the Court declaring that Key had a reasonable basis for its claims handling regarding the underlying Subject Accident; therefore, Key's maximum exposure for Helou's claims for bodily injury against Cook arising from the Subject Accident is limited to $25,000;

4. For attorney's fees and costs incurred herein; and

5. For such other and further relief as the Court deems just and proper.

DATED this 16th day of October, 2023.

K E A T I N G LAW GROUP

By: */s/ Kegan A. McMullan, Esq.*

JOHN T. KEATING, ESQ.
Nevada Bar No. 6373
KEGAN A. MCMULLAN, ESQ.
Nevada Bar No. 16278
K E A T I N G LAW GROUP
9130 W. Russell Road, Suite 200
Las Vegas, Nevada 89148
*Attorneys for Plaintiff*
*Key Insurance Company*